UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 5:13-CR-153-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE BANOS, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant Jose Banos' Motion to Suppress [DE 26]. The United States has filed a Response, stating its objections to the Motion [DE 33]. The Court conducted a hearing with respect to this motion on January 9, 2014, and, at the conclusion of that hearing the Court announced its decision: the Motion was denied. This Memorandum Opinion is intended to memorialize the reasoning supporting the Court's decision.

As an initial matter, there is no disagreement as to the relevant facts. Following the arrest of Defendant Jose Banos on October 22, 2013, on charges of conspiring to distribute narcotics, Defendant was provided his *Miranda* rights in translation. At that time, he declined to answer any questions without the assistance of an attorney. When Special Agent Jared Sullivan and Analyst David Houtz later transported Defendant Banos to the courthouse for his

1

initial appearance, they were aware that Defendant Banos had invoked these rights. Special Agent Sullivan spoke to Defendant along the route, explaining the seriousness of the situation and the charges against Defendant Banos. During that time, Sullivan explained that, among other things, nearly 9,000 pills had been seized and that, as a result, Banos was facing 10 to 12 years in prison for a very serious crime if convicted. Both Sullivan and Houtz testified that Banos spoke up in response to Sullivan's monologue, stating "I did not know quantity." There is no evidence that Sullivan asked a question; engaged in threatening or intimidating conduct; or used loud or abusive language.

Defendant argues that the statement should be excluded from the evidence available for use at trial in this matter, because Sullivan knew that Banos had clearly and unambiguously invoked his right to counsel following the reading of his *Miranda* rights and that any further conversations or interactions likely to elicit an incriminating response from Defendant were improper. He asked the Court to conclude that any statements or admissions elicited from Defendant during his transport to the federal courthouse on October 24, 2013, should be excluded from evidence. The Court has declined to order such relief for the reasons stated at the conclusion of the hearing on this Motion and which are related again, below.

Under *Miranda v. Arizona,* "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from

2

custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). This rule from Edwards is considered "a corollary to Miranda's admonition that 'if the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (quoting *Miranda*, 384 U.S. at 474).

As a general matter, "custodial interrogation . . . mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980).

Interrogation must cease after an individual in custody invokes his right to counsel, but the most important factor is whether there has been an interrogation, i.e., whether there is a measure of compulsion that is more than merely being in custody. *Id.* at 300.

In the absence of some measure of compulsion, "[a]n accurate statement made by an officer to an individual in custody concerning the nature of the charges to be brought against the individual cannot reasonably be expected to elicit an incriminating response." *United States v. Collins*, 683 F.3d 697, 703 (6th Cir. 2012); *see also United States v. Johnson*, 680 F.3d 966, 977 (7th Cir. 2012); *United States v. Howard,* 532 F.3d 755, 762 (8th Cir. 2008); *McCalvin v Yukins,* 444 F.3d 713, 721 (6th Cir. 2006); *United States v. Payne,* 954 F.2d 199, 202-203 (4th Cir. 1992). Thus, in *Collins*, the Court of Appeals held that no suppression was required where a defendant volunteered "I'll take the charge" in response to an officer's advice that both driver and passenger would be taken into custody where both had denied knowledge of a weapon found beside a stopped vehicle after officers observed the door of the vehicle opening and closing upon the stop of the vehicle. *Id*. at 700-01.

Similarly, in the matter at hand, Special Agent Sullivan conveyed to Banos a description of the number of pills involved in the charge and the possible penalty that could result from a conviction involving that amount. In making that statement or statements, Sullivan spoke no words and took no actions that he

4

knew or reasonably should have known were likely to elicit the statement "I did not know quantity" – or any other response, incriminating or not – from Banos during the ride to the courthouse. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Innis*, 446 at 299-300 (citing *Miranda*, 440 U.S. at 478). In the absence of coercion or "compelling influences," the Court concludes that the statement – "I did not know quantity" –  was made voluntarily.

As Banos' statement that he "did not know quantity" was made freely and voluntarily on the facts in this case, it is admissible in evidence.  As previously announced, Defendant's Motion to Suppress is denied, and the statement will not suppressed.

This the 14th day of January, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

5